LAMPER v. OSIUS et al.

No. 165–M.

District Court, S. D. Florida, Miami Division.

April 15, 1941.

374

R. P. Terry, of Miami, Fla., for plaintiff.

J. Mark Wilcox. (of Firm of Hudson & Cason), of Miami, Fla., and E. L. Lockhart, of Miami Beach, Fla., for defendants.

HOLLAND, District Judge.

The above entitled cause having come on for hearing upon the complaint and the answers of the defendants and the Court having heard testimony of both plaintiff and defendants and argument of counsel, and having considered the oral testimony and the documentary evidence introduced upon the trial of said cause, and being fully informed, makes the following findings of fact and conclusions of law:

### Findings of Fact.

In the year 1929 Louise Zabransky, a widow, was the owner and operator of a very large "beauty salon" in Miami Beach, Florida, the gross receipts from which amounted to approximately Twenty Thousand Dollars ($20,000) per annum. F. J. Osius in that year owned, among other properties, a residence property at the corner of Lincoln Road and Washington Avenue, in the same City. The Osius property was highly restricted both by convenants in his deed and by municipal zoning ordinance. In an effort to break the restrictions, Osius leased the property in 1929 to Louise Zabransky for an annual rental of One Thousand Eight Hundred Dollars ($1,-800) per year with the understanding that he would construct suitable business buildings thereon to accommodate her beauty salon.

In 1929 Louise Zabransky paid to Osius the sum of Four Thousand Five Hundred Dollars ($4500), of which One Thousand Eight Hundred Dollars ($1,800) represented one year's rent for the property, and Two Thousand Seven Hundred Dollars ($2,700) was an advance to Osius to enable him to construct the proposed building. Pending the proposed construction, she advanced a large additional sum for repairs to and reconditioning of the old residence building then on the property and converting it into suitable quarters for the operation of the beauty salon. (The amount of these latter advances is now incapable of proof due to loss of records in the hurricane of 1935.)

Osius failed to construct the proposed new building.

Beginning in 1930, F. J. Osius borrowed money from Louise Zabransky from time to time. Some of the loans were made directly by the issuance and delivery of checks, some were made in cash, and some were made by the payment of bills of F. J. Osius (these latter being paid at the in-

stance and direction of F. J. Osius). These loans were made upon the agreement that they would be repaid with interest.

In July, 1932, F. J. Osius and Louise Zabransky were married. The loans and cash advancements were continued after marriage until the summer of 1933.

On August 4, 1933, F. J. Osius was indebted to Louise Z. Osius (formerly Louise Zabransky) in the following minimum amounts:

| | |
|---|---:|
| For advance in 1929 | $ 2,700.00 |
| For checks payable to F. J. Osius | 6,634.22 |
| For cash 1930 to June 20, 1932 | 5,860.00 |
| For bills paid for Osius | 4,290.50 |
| Total | $19,484.72 |

In the year 1930 Osius had incorporated a corporation known as "F. J. Osius Realty Company," and had conveyed to it the property at Lincoln Road and Washington Avenue in Miami Beach.

On August 4, 1933, F. J. Osius conveyed to Louise Z. Osius his stock in the F. J. Osius Realty Company and assigned to her certain mechanical patents in payment of the sums so borrowed by him from her. She accepted the stock and patents in settlement of the sums owing to her by the said Osius.

At that time Osius owned seven other parcels of real estate in Miami and Miami Beach, including a large apartment house in Miami.

None of the patents so transferred has any market value. The property owned by the F. J. Osius Realty Company had an estimated "speculative value" at that time of Thirty-Five Thousand Dollars ($35,000) to Forty Thousand Dollars ($40,000). Said property, however, was subject to liens as follows:

| | |
|---|---:|
| Unpaid State, County and Municipal taxes and assessment liens | $11,045.84 |
| A mortgage to Mrs. Funk, Principal alone | 5,000.00 |
| Total, besides interest | $16,045.84 |

During the period 1930–1933 and at the time of the conveyance of the stock and patents (August 4, 1933) Louise Zabransky Osius knew nothing of the business affairs or financial condition of F. J. Osius beyond the fact that he owed large sums for taxes and that he was "hard up for cash" due to his inability to collect rents.

Upon acquisition of the stock, Louise Z. Osius began a continuous effort to sell the property of F. J. Osius Realty Company or to borrow Twenty Thousand Dollars ($20,000) to pay off the liens against it and make necessary repairs. During the remainder of 1933 she continued these efforts entirely without success. Finally, in March, 1934 (economic conditions having somewhat improved), she procured a loan of Fourteen Thousand Four Hundred Dollars ($14,400) net, by giving a first mortgage with eight per cent (8%) interest on the property, but in order to obtain such loan it was necessary for her to pay bonuses amounting to One Thousand Five Hundred Dollars ($1,500).

In November 1934 (fifteen months after the conveyance and delivery of the stock and patents to Louise Z. Osius in payment of the debts owing to her) F. J. Osius was adjudged a bankrupt. He scheduled no assets except such as were exempt.

The first meeting of creditors and examination of the bankrupt was set for November 24, 1934. Notice of the meeting was served and published as required by law. Two creditors filed proofs of their claims but no creditors appeared to examine the bankrupt or participate in the meeting. An order was entered declaring the case to be a "no asset" case and setting aside the listed property as exempt.

F. J. Osius was residing with Louise Z. Osius on the property of F. J. Osius Realty Company at the corner of Lincoln Road and Washington Avenue in Miami Beach at the time of his adjudication in bankruptcy and continued to reside there until he separated himself from her in 1937.

Arjen Realty Company, a Florida Corporation (the moving creditor in the instant case) was represented by R. P. Terry, its attorney. Mr. Terry received the notice of the first meeting of creditors, examined the bankrupt's schedules and talked with the bankrupt's attorney. Arjen Realty Company did not file any proof of claim because no assets were scheduled. Mr. Terry's office at that time was, and ever since has been, in the same building with the Referee in Bankruptcy. Neither Arjen Realty Company nor its attorney attended the scheduled meeting of creditors, did not examine the bankrupt, and did not at that time, nor at any time for five years there-

after, make any investigation or inquiry as to any transactions of F. J. Osius.

On January 18, 1935, the State Life Insurance Company of Indianapolis, Indiana (one of the two creditors who has filed proofs of claim in the bankruptcy case), filed in the bankruptcy proceeding a petition alleging that prior to the bankruptcy F. J. Osius has made the aforesaid conveyance and that said conveyance constituted a fraud against creditors. Said petition prayed that the bankrupt be brought in for examination by creditors. On the same day the Referee entered an order setting aside the original order which had declared the case to be a "no asset" case, and directing the bankrupt, F. J. Osius, to appear before the Court on January 25, 1935, then and there to submit himself to examination by his creditors.

The Bankrupt was discharged on the 22nd day of January, 1935. Thereafter, on March 19, 1936, the Referee entered his order upon said petition reciting that said petition having been abandoned, the bankruptcy case was closed. On May 4, 1936, the Referee filed his final report in the case.

On January 5, 1939, F. J. Osius died.

In October, 1939, Arjen Realty Company (through its attorney, R. P. Terry) filed its petition asking that the bankruptcy case be reopened, a trustee appointed and authority granted for the filing of a suit to set aside the conveyance of August 4, 1933. An ex parte order was granted reopening the bankruptcy case. On November 18, 1939, the Arjen Realty Company filed with the Referee its proof of claim, and on February 26, 1940, this suit was filed.

F. J. Osius Realty Company owns no property except the land at the corner of Lincoln Road and Washington Avenue in Miami Beach, and has no income. The zoning restrictions against the property have never been lifted. The defendant, Louise Z. Osius, from her own funds has paid off the liens against the property of the corporation, has paid the State, County and City taxes for each of the years since she purchased the stock of the corporation (which for the six years have amounted to $12,472.54), has paid the insurance premi-

ums, the cost of upkeep, repairs and maintenance and has installed improvements (an incomplete list of checks introduced in evidence shows more than $4,000 for improvements) and has borne the expense of litigation for the removal of restrictions and zoning regulations.

Because of the restrictions upon the property, and the litigation in connection with the attempt to remove them, Louise Z. Osius' business constantly grew less, until in 1940 she was forced to cease all business activity.

### Conclusions of Law.

I. The Court considered the two year Statute of Limitations,[1] under the submission of the third and fourth defenses, under order of Court dated November 4, 1940, and notified counsel by letter of date November 5, 1940. The Court now finds as a conclusion of law that the two year Statute is not applicable to this case.

II. The facts which were set out in the petition of State Life Insurance Company, filed January 18, 1935, should have been known to any diligent creditor. The Court holds as a conclusion of law from the facts found that this cause is barred by the provisions of Section 4663 of the Compiled General Laws of Florida (1927) subsubsection 4 of subsection 5, because the same was not filed within three years of the time when in the exercise of reasonable diligence the facts constituting the alleged fraud should have been discovered.

III. The creditors of F. J. Osius have been guilty of laches barring their right to have the transfers referred to in the complaint set aside.

IV. The transfer of the patents and the capital stock of the F. J. Osius Realty Company, referred to in the complaint in this cause, was made by F. J. Osius to Louise Z. Osius in payment of a valid pre-existing indebtedness and the settlement and satisfaction of said indebtedness constituted a valid, fair and adequate consideration for the said transfer.

V. The equities of this cause are with the defendants.

---

[1] Section 11, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 29, sub. d, provides: "Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed." (This section was amended by the Chandler Act of 1938, but the above provision was in effect for more than two years after the order closing the estate of F. J. Osius, and was, therefore, properly considered in this case.)

Upon these findings of fact and conclusions of law a decree will be, entered against the plaintiff and in favor of the defendants, and it is so ordered.